IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NICK ROLISON,**<br>            **Plaintiffs,**<br><br>          v.<br><br>**THE EDGEWOOD COMPANY, INC.,**<br>            **Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO.  23CV3909** |

### MEMORANDUM OPINION

Plaintiff Nick Rolison sued his former employer, The Edgewood Company, Inc. ("Edgewood"), stemming from the company's actions after Rolison suffered a work-related injury.  He specifically brought an interference and retaliation claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, as well as claim that "Defendant unlawfully violated the public policy exception to Pennsylvania's common law tradition of at-will employment by unlawfully terminating Plaintiff's employment in retaliation for Plaintiff's decision to avail himself of the benefits of the Pennsylvania Workers' Compensation [Act]."

Edgewood has moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), on each of Rolison's claims.  For the reasons set forth below, Edgewood's Motion will be denied.

   **I.   FACTUAL BACKGROUND**

Except where otherwise noted, the following facts are not in genuine dispute.

In 2021, Rolison began work as a Laborer/Equipment Operator for Edgewood, a construction firm based in Pennsylvania.  His duties included helping build retaining walls and patios, as well as operating machinery under the direction of his foreman and friend, Austin Rogers.  Rogers, as foreman, acted as Rolison's supervisor and main point of contact on the job

1

site. Situated a few rungs above Rogers in the company hierarchy was Jonathan Fry, Edgewood's co-owner and Vice President, who handled payroll and human relations work at the relevant time.

On April 20, 2023, while Rolison was attempting to lift an object at work, he heard a pop in his back and felt a sharp pain. He immediately reported this work injury to Rogers, who noted that Rolison appeared to be injured and in pain. Rogers told Rolison to "take it easy" for the rest of the day so as not to exacerbate the injury. The same day, a "Vacation Request Form" was filed on Rolison's behalf and approved by Fry, indicating that Rolison would be off work from April 21, 2023 through May 1, 2023.

Five days later, on April 25, 2023, Rolison sought medical treatment and was diagnosed with three herniated discs in his back. He notified Rogers of his diagnosis, and Rogers passed the news on to his supervisor, who in turn reported it to Fry sometime between April 25, 2023 and May 2, 2023. Rolison also avers that he attempted to contact Fry several times to speak with him directly about his injury.

On May 2, 2023, Fry and Rolison spoke on the phone. Rolison asked Fry to start a Workers' Compensation claim for him, and Fry agreed to do so. Fry testified that, at the time of this phone call, Rolison was still employed by Edgewood. Rolison did not ask for FMLA leave during this call and he alleges that Fry did not bring it up either. Fry, for his part, could not recall whether he mentioned FMLA during the call, although he admitted that he would normally tell an injured employee about FMLA leave when discussing a Workers' Compensation claim with them. Edgewood's Employee Handbook also provides that:

> Any employee who is unable to work due to a work related injury or illness and who is eligible for Workers' Compensation benefits will be provided an unpaid leave for the period required. The first 12 weeks will be treated concurrently as a family and medical leave

2

under the [FMLA] for employees eligible for FMLA leave.

On June 1, 2023, Rolison filed a Workers' Compensation claim with the Pennsylvania Bureau of Workers' Compensation. About a week later, he received a document informing him that his claim had been denied. That document, dated June 7, 2023, stated that Rolison was no longer employed by Edgewood; this was how Rolison discovered that his employment had been terminated.

When asked about the circumstances surrounding Rolison's termination, Fry testified that Rolison was "not fired;" however, Edgewood concedes in its Statement of Undisputed Material Facts that Rolison was terminated based on his "fail[ure] to report to work beginning on May 1, 2023, without notifying his supervisors," in violation of the company's "no-call, no-show" policy. Edgewood has not identified the precise date of Rolison's termination but notes that the termination occurred "[a]fter several days of unexcused absences," suggesting that the termination occurred sometime in May.

## II.   LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record

evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important . . . summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

#### A. FMLA Claims

Rolison brings two kinds of FMLA claims stemming from Edgewood's decision to terminate his employment post-injury: (1) an interference claim; and (2), a retaliation claim. The Third Circuit has recognized that where, as Rolison alleges here, an employer "fir[es] an employee for a valid request for FMLA leave," that one act "may constitute [both] interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

Furthermore, the elements of the two claims overlap in cases such as these. For one, both claims require a plaintiff to show they actually took, or attempted to take, FMLA leave.

4

*See Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (explaining that an interference claim requires a plaintiff to show that they notified their employer of their intent to take FMLA leave and that the employer denied them FMLA benefits to which they were entitled); *id.* at 193 (explaining that a retaliation claim requires a plaintiff to show that they invoked their right to FMLA leave and suffered an adverse employment action thereafter). Further, since "[o]ne of the rights that [the FMLA] guarantees is 'to be restored by the employer to the position of employment held by the employee [or an equivalent position] when the leave commenced' upon return from FMLA leave," firing an employee because they took or tried to take leave can constitute both an act of interference and an "adverse action" for the sake of retaliation. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 252, 257-58 (3d Cir. 2014) (quoting 29 U.S.C. § 2614(a)(1)).

Against this legal backdrop, summary judgment is inappropriate on either of Rolison's FMLA claims because disputed material facts exist regarding Rolison's notice to Edgewood about his intent to take FMLA leave. To invoke rights under the FMLA an employee must provide adequate notice to the employer of the need to take leave. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012) (citing 29 U.S.C. § 2612(e)(2)). "When the leave is unforeseeable, the employee's obligation is to 'provide sufficient information for an employer to reasonably determine whether the FMLA *may* apply to the leave request.'" *Id.* (quoting 29 C.F.R. § 825.303(b)) (emphasis in original). "[T]his is not a formalistic or stringent standard," and "where the employer does not have sufficient information . . . *the employer* should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying." *Id.* (quoting 29 C.F.R. § 825.303(b)) (emphasis in original).

Here, material facts are in genuine dispute regarding Rolison's notice to Edgewood. For

5

example, the parties genuinely dispute, and the record does not clearly demonstrate, whether Rolison attempted to reach Fry via telephone on the days between his April 25 diagnosis and their eventual phone conversation on May 2—a fact which is material in determining whether Rolison gave legally-sufficient notice to Edgewood regarding the severity of his injury, and whether Fry's failure to inform Rolison of his right to FMLA leave was prejudicial to him such that it constitutes interference.  See Burbach v. Arconic Corp., 561 F. Supp.3d 508, 517 (W.D. Pa. 2021) ("Where, as here, the employee claims that FMLA interference occurred based upon the employer's failure to inform him of his ability to take FMLA leave, the employee must show resulting prejudice.") (citing Conoshenti v. Pub. Serv. Elec. & Gas. Co., 364 F.3d 135, 143 (3d Cir. 2004)).  The parties also genuinely dispute whether Rolison kept Rodgers abreast of the severity of his injury and the extent of his need for medical leave; although the parties agree that Rolison texted Rodgers a few updates on his condition, they disagree about whether Rolison and Rodgers had more substantive conversations on the phone during the weeks after the injury. Further disputes exist regarding what was spoken about during the May 2, 2023 phone call between Rolison and Fry—specifically, whether Rolison provided adequate information about his injury to Fry to put him on notice that FMLA leave might be appropriate.

      Citing to the Third Circuit's opinion Lichtenstein v. University of Pittsburgh Medical Center, Edgewood argues that "employees must provide specific information sufficient to alert the[ir] employer to a possible serious health condition requiring protected leave," and that Rolison's "communications with his supervisors fell short of this standard."  See 691 F.3d at 303 ("[T]he FMLA 'does not require an employer to be clairvoyant' . . . ." (citing Brenneman v. MedCentral Health Sys., 366 F.3d 412, 428 (6th Cir. 2004))).  But in the same case, the Third Circuit also explained that "the 'critical test' is not whether the employee gave *every necessary*

6

*detail* to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted,'" which "is generally a question of fact, not law." *Id*. (quoting *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007)) (emphasis added).  As described above, there are several factual disputes about what was communicated between Rolison and Rodgers in the days following the accident, as well as what was said during the phone call on May 2, 2023 between Rolison and Fry.  These are matters for a fact-finder to resolve; until one has done so, it is impossible to conduct the "critical," fact-bound test that asks "how the information conveyed to [Edgewood] is reasonably interpreted." *Id*.  Accordingly, Edgewood's Motion will be denied as to Rolison's FMLA claims.

### B. Wrongful Termination Claim

Under Pennsylvania law, an employer may generally dismiss an employee for any reason unless restrained by contract.  *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998) (quoting *Henry v. Pittsburgh & Lake Erie R.R. Co.*, 21 A. 157, 157 (1891)).  However, such power is not absolute and "may be qualified by the dictates of public policy." *Id*.  As is relevant here, one such qualification exists in the form of a cause of action for wrongful discharge of an employee who files a claim for workers' compensation benefits. *Id*. at 1238.  This cause of action is available to a terminated employee regardless of whether they filed the claim with their employer or with the Bureau of Workers' Compensation.  *Owens v. Lehigh Valley Hosp.*, 103 A.3d 859, 869 (Pa. Commw. 2014).

Edgewood argues that Rolison cannot succeed on a wrongful termination claim because it fired him not for seeking workers' compensation, but rather for violating the company's "no-call, no-show" policy.[1]  Rolison, arguing that the opposite is true, relies on the close temporal

---

[1] Edgewood also argues that Rolison did not file a workers' compensation claim before he was terminated, making it

proximity between the initiation of his workers' compensation claim (May 2, 2023) and the date of his termination (sometime between May 2 and June 7, 2023) as evidence of retaliatory intent. Neither party has adduced evidence indicating the exact date of the termination.

Although there is a rich body of caselaw analyzing the significance of temporal proximity in the Title VII workplace discrimination context, Pennsylvania courts have explicitly declined to adopt that legal framework when evaluating public policy wrongful termination claims, calling instead for analysis on a "case-by-case basis." *Owens*, 103 A.3d at 868.  In this case, it would be premature to hold that Edgewood is entitled to relief on a wrongful discharge claim when Edgewood has not clarified the exact date on which that discharge took place—a highly material fact here which Edgewood, as the employer, should know and have provided.  Without that information, a fact-finder must determine the relevant timeline, making it too early to conduct the "case-by-case" analysis called for by Pennsylvania courts.  Accordingly, Edgewood's Motion for Summary Judgment will be denied on Rolison's wrongful termination claim too.

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____
**WENDY BEETLESTONE, J.**

---

impossible for the company to have retaliated against him for doing so.  The record, however, shows otherwise.  Fry testified that Rolison asked him to start a workers' compensation claim during their phone call on May 2, 2023.  He also testified that Rolison was still employed at the time that phone call took place.  Edgewood also admits, in its Statement of Material Facts, that Rolison was only terminated "[a]fter several days of unexcused absences" which began on May 1, 2023.  These inconsistencies in Edgewood's own representations are enough to raise a genuine issue of material fact as to when Rolison was terminated.